```
           UNITED STATES DISTRICT COURT
              DISTRICT OF MINNESOTA
              Civil No. 12-132(DSD/JJK)
```

The Prudential Insurance
Company of America and
Pruco Securities, LLC,

       Plaintiffs,

v.                                       **ORDER**

Terry C. Sandvold,

       Defendant.

    Anthony Paduano, Esq., Leonard Weintraub, Esq. and Paduano & Weintraub LLP, 1251 Avenue of the Americas Ninth Floor, New York, NY 10020 and Norah E. Olson Bluvshtein, Esq., Theresa M. Thompson, Esq. and Fredrikson & Byron, PA, 200 South Sixth Street, Suite 4000, Minneapolis, MN 55402, counsel for plaintiffs.

    Thomas E. Jamison, Esq., Douglas L. Elsaas, Esq., Adam A. Gillette, Esq. and Fruth, Jamison & Elsaas, 3902 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402, counsel for defendant.

    This matter came before the court on January 20, 2012, upon the motion for a temporary restraining order (TRO) by plaintiff The Prudential Insurance Company of America and Pruco Securities, LLC (collectively, Prudential). Prudential and defendant Terry C. Sandvold appeared through counsel. Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants the TRO in part.

**BACKGROUND**

This matter arises out of the termination of Sandvold by Prudential on January 17, 2012. Prudential is an insurance and financial services firm that had employed Sandvold since September 1986. See Compl. ¶ 12. Prior to termination, Sandvold conducted business as Sandvold and Associates, working from a private office in St. Louis Park, Minnesota. Id. Sandovld's office employed four associate producers that were affiliated with Prudential and twelve marketing assistants that were directly employed by Sandvold. Id.; Nelson Decl. ¶ 5. The office serviced approximately 4,300 clients. Compl. ¶ 12; Nelson Decl. ¶ 5

Prudential first investigated Sandvold for violations of Prudential policies in late 2010 through January 2011. See Compl. ¶ 13. As a result of this investigation, Sandvold was placed on probation by Prudential in March 2011. Id. Prudential continued investigation of Sandvold's office in late 2011, and discovered numerous additional violations of Prudential policies and procedures.[1] This investigation resulted in the termination of Sandvold's affiliation with Prudential on January 17, 2012.

---

[1] Prudential alleges, among other things, violations of: use of improper client signatures, failure to report written customer complaints, removal and destruction of customer records, unapproved correspondence to Prudential customers and unlicenced employees executing transactions. See Compl. ¶ 14.

At the time of termination, a Career Special Agent's Contract (Special Agent Contract), signed on January 16, 1989, was in effect. Section 6(g) of the Special Agent Contract states:

> *Accounts and Records*: All books, accounts, computer and/or other records, documents vouchers, letters received, and all other items provided by the Company, and relating to or connected with the business of the Company or a subsidiary Company, shall be the property of the Company. *Upon termination of this Contract by either party, for any reason ... the Agent shall immediately return to the Company all accounts and records as defined above*. The Agent shall at all times, up to and including the return of said accounts and records to the Company, preserve and protect the confidentiality of such accounts, records and other items.

Nelson Decl. Ex. 1, at 5 (emphasis added). The four associate producers and twelve marketing assistants signed similar confidentiality provisions. See Compl. ¶ 18.

At the time of termination, Prudential requested the return of all proprietary information, but Sandvold refused to provide client files and did not allow Prudential's information technology specialist to access Sandvold's computers. See id. ¶ 27. Prudential alleges these files are "highly confidential and proprietary business and client information" that includes "clients' names, home addresses, e-mail addresses, telephone numbers, income, net worth, social security numbers, birth dates, contract renewal dates, account statements, financial investments and asset allocation." Id. ¶ 22.

On January 17, 2012, Prudential moved for a TRO, and the court scheduled a hearing for January 20, 2012. Following the partial oral grant of the motion after argument, the court advised the parties to submit a joint proposed order, or separate proposals if agreement could not be reached, by January 24, 2012. The parties did not reach agreement, and the court now addresses the motion.

## DISCUSSION

A TRO is an extraordinary equitable remedy, and the movant bears the burden of establishing its propriety. See Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003). The court considers four factors in determining whether a TRO should issue: (1) the threat of irreparable harm to the movant in the absence of relief, (2) the balance between that harm and the harm that the relief may cause the non-moving party, (3) the likelihood of the movant's ultimate success on the merits and (4) the public interest. See Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc).

**I.   Irreparable Harm**

Prudential argues that Sandvold's use of proprietary customer information will result in irreparable harm. For irreparable harm, "a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." Iowa Utils. Bd. v. F.C.C., 109 F.3d 418, 425 (8th Cir.

1996).  "[P]otential loss of goodwill qualifies as irreparable harm."  Id. at 426.  Based on Sandvold's possession of Prudential's proprietary information, Prudential has demonstrated that without equitable relief it is likely to suffer irreparable harm to its goodwill.  See, e.g., Wells Fargo Invs., LLC v. Bengtson, No. 0:07-cv-3192, 2007 WL 2007997, at *2 (D. Minn. July 9, 2007) (noting that the ability to safeguard "confidential [financial services client] information is intangible").  Therefore, this factor weighs in favor of Prudential.

## II. Balance of Harms

The court has already determined that plaintiff's goodwill is harmed by defendant's acts.  Balanced against that harm is the harm to Sandvold's ability to operate Sandvold and Associates.  Such harm is lessened, however, because Sandvold and Associates may continue to operate and compete lawfully and because there is no evidence in the record that a TRO will prevent Sandvold and Associates from continuing to operate.[2]  Cf. CDI Energy Servs., Inc. v. W. River Pumps, Inc., 567 F.3d 398, 403 (8th Cir. 2009) (holding that balance of harms favored defendant when it "appear[ed] undisputed that an injunction would put the defendants out of business").  Therefore, this factor weighs in favor of plaintiffs.

---

[2] This is especially true given that the ordered relief allows Sandvold to keep all client files.

5

**III.  Likelihood of Success on the Merits**

The court next considers the likelihood that the movant will prevail on the merits. S & M Constructors, Inc. v. Foley Co., 959 F.2d 97, 98 (8th Cir. 1992). A TRO "motion is too early a stage of the proceedings to woodenly assess a movant's probability of success on the merits with mathematical precision." Gen. Mills, Inc. v. Kellogg Co., 824 F.2d 622, 624 (8th Cir. 1987). The court does not decide whether the movant will ultimately win, or if a greater than fifty-percent likelihood of success exists. See Glenwood Bridge, Inc. v. City of Minneapolis, 940 F.2d 367, 371 (8th Cir. 1991).

Prudential alleges claims for breach of contract, violation of the Minnesota Uniform Trade Secret Act and conversion. Prudential need only demonstrate that it is likely to succeed on one claim in order to satisfy this prong of Dataphase. See United Healthcare Ins. Co. v. AdvancePCS, 316 F.3d 737, 742–43 (8th Cir. 2002).

It is a requirement of the Special Agent Contract that Sandvold return "all books, accounts, computer and/or other records, documents, vouchers, letters received, and all other items provided by the Company, and relating to or connected with the business of the Company" upon termination. Nelson Decl. Ex. 1, at 5. Sandvold argues that Prudential's property includes only those things that were both "provided by" and "relating to or connected with business of" Prudential. See Def.'s Resp. 10. The court

6

disagrees, because such an interpretation would render the following sentence of the Special Agent Contract meaningless. It states that upon termination the agent shall return all "accounts and records as defined above." Nelson Decl. Ex. 1, at 5. Although not defined in the Special Agent Contract, accounts and records, especially in the context of a financial services firm, require continual service and updating and could not be entirely "provided by the Company." The court interprets contracts to avoid absurd results and to give meaning to all provisions of a contract. See Brookfield Trade Ctr., Inc. V. Cnty. of Ramsey, 584 N.W.2d 390, 394 (Minn. 1998). Therefore, because plaintiff is likely to succeed in their breach of contract claim, this factor weighs in favor of Prudential.

**IV.  Public Interest**

The public interest does not strongly favor one party over the other. There is a public interest in upholding contractual agreements. See Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc., 336 F.3d 801, 805 (8th Cir. 2003). There also is a public interest, however, in unrestrained competition. See Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc., 815 F.2d 500, 505 (8th Cir. 1987). Here, it appears that Sandvold may be engaging in unfair competition. Therefore, the public interest factor favors Prudential. Accordingly, based upon a balancing of the four Dataphase factors, a TRO is warranted.

**CONCLUSION**

Based on the above and the proposed orders submitted by both parties, **IT IS HEREBY ORDERED** that:

1. The motion for a temporary restraining order [ECF No. 2] is granted in part.

2. Defendant shall return to plaintiffs all hardware, software and other physical property (which, as addressed in paragraph 3 below, does not include client files) belonging to plaintiffs within one day of the issuance of this order.

3. Defendant shall make available for copying, imaging or duplicating by plaintiffs all documents related to Prudential's customers, policyholders and accountholders that are in defendant's and Sandvold and Associates' files. Pending any subsequent determination by either the court or the Financial Industry Regulatory Authority (FINRA) arbitration panel, defendant shall retain the originals of the documents in the manner they were kept as of January 17, 2012. The parties shall cooperate concerning the process for copying, imaging or duplicating the documents, which will occur at Sandvold and Associates' offices in St. Louis Park, Minnesota. The parties may each designate lawyers or other agents to supervise the copying, imaging or duplicating process.

4. The copying, imaging or duplicating may commence immediately, but in no event later than January 30, 2012, and shall be completed as soon as reasonably possible.

5.   Plaintiffs shall bear all costs relating to the copying, imaging or duplicating of the documents.

6.   Plaintiffs shall post a bond of $5,000.00 pursuant to Federal Rule of Civil Procedure 65 within two business days of the issuance of this order.

7.   This order shall be binding upon the parties and all those acting at the direction of the parties, including but not limited to their employees, representatives and agents.

8.   Defendant shall preserve and not alter or destroy any Prudential client files, records or other documents in defendant's possession or the possession of defendant's employees, agents and representatives.  The parties shall preserve and protect all electronic data as required by the Federal Rules of Civil Procedure that relate in any way to this litigation and shall suspend any automatic destruction of any such electronic data.

9.   The parties are hereby granted leave to engage in mutual expedited discovery.

10.  This order shall remain in full force and effect until such time as a FINRA arbitration panel issues a final decision on Prudential's request for permanent injunctive relief, or this Court specifically orders otherwise.

Dated:  January 25, 2012

                                        s/David S. Doty
                                        David S. Doty, Judge
                                        United States District Court